UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

i3 ASSEMBLY, LLC,

                              Plaintiff,              3:18-cv-00599 (BKS/TWD)

v.

UNITED STATES OF AMERICA,

                              Defendant.
_____

**Appearances:**

*For Plaintiff:*
Thomas A. Saitta
Aswad & Ingraham, LLP
46 Front St.
Binghamton, NY 13905

*For Defendant:*
Richard E. Zuckerman
Principal Deputy Assistant Attorney General
Marie E. Wicks
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiff i3 Assembly, LLC brings this action against the United States of America under

26 U.S.C. § 7426 alleging that the Internal Revenue Service ("IRS") wrongfully levied property

belonging to Plaintiff. (Dkt. No. 1).[1] Defendant moves to dismiss under Federal Rule of Civil

---

[1] Plaintiff also alleged tort claims of conversion arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Defendant moves to dismiss these claims because Plaintiff failed to exhaust administrative remedies, as required by the FTCA, and, in any event, the waiver of sovereign immunity under the FTCA excludes

Procedure Rule 12(b)(1) or, in the alternative, for summary judgment under Rule 56. (Dkt. No. 26). Plaintiff opposes. (Dkt. No. 28). For the reasons below, Defendant's motion to dismiss is granted as to Counts Two, Three, and Four, and denied without prejudice to renewal as to Count One.

## II. FACTS[2]

Plaintiff[3] entered into an agreement, dated October 2, 2015, with VMR Electronics Corporation ("VMR") to "purchas[e] certain 'Acquired Assets' from [it]." (Dkt. No. 1, ¶ 10). Plaintiff "assume[d] only specifically identified liabilities of [VMR]," (*id.* ¶ 11), which did not include "[a]ny obligation that [VMR] had with respect to the United States of America, the Internal Revenue Service, or any agency or department of the United States of America that was not one of the assumed liabilities." (*Id.* ¶ 12). VMR had a different Tax Identification Number than Plaintiff. (*Id.* ¶ 13). After purchasing VMR's assets, Plaintiff "used its own labor and materials to fulfill a number of contractual obligations to Defendant." (*Id.* ¶ 15). After Plaintiff fulfilled the "contractual obligations . . . for work and product," it sent invoices to Defendant reflecting the amount it was owed. (*Id.* ¶¶ 16, 27).

---

claims "arising in respect of the assessment or collection of any tax." (Dkt. No. 26-1, at 3, 17–18) (quoting 28 U.S.C. § 2680(c)). Plaintiff did not file any claim under the FTCA or otherwise exhaust its administrative remedies, and concedes that these claims (the third and fourth causes of action) should be dismissed. (Dkt. No. 26-1, at 6; Dkt. No. 28-4, ¶ 14; Dkt No 28-3, at 2). Since Plaintiff failed to exhaust its FTCA administrative remedies, the Court does not have jurisdiction to hear the FTCA claims, and they must be dismissed under Rule 12(b)(1) without prejudice. *Obispo v. Bronx Lebanon Hosp.*, No. 19-cv-2815, 2019 WL 6870996, at *6, 2019 U.S. Dist. LEXIS 216701, *12–13 (S.D.N.Y. Dec. 17, 2019).

[2] The facts are taken from the Complaint, (Dkt. No. 1), the Defendant's Statement of Facts (Dkt. No. 26-1, at 4) and Plaintiff's Response (Dkt. No. 28-4), and the affidavits and exhibits attached to the parties' submissions in connection with this motion. The Court has considered the Statement of Facts, affidavits and exhibits because "a defendant is permitted to make a fact-based Rule 12(b)(1) motion." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

[3] Plaintiff is a limited liability company whose principal address is in Binghamton, New York. (Dkt. No. 1, ¶¶ 3–4). It was initially named VMR Assemblies, LLC, then i3 Cable & Harness, LLC, and is now named i3 Assembly, LLC. (*Id.* ¶¶ 6–8). It has maintained the same Tax Identification Number ("TIN"). (*Id.* ¶ 9).

Defendant did not pay Plaintiff the amount it billed for its work and product. (*Id.* ¶¶ 18, 21, 29, 32). Instead, the money Defendant owed Plaintiff was levied to fulfill tax debt owed by VMR—the party who had originally "entered into a number of contracts with the U.S. Department of Defense," which Plaintiff ultimately fulfilled. (Dkt. No. 26-1, ¶ 4; Dkt. No. 1, ¶ 15). Specifically, "[d]ue to an outstanding federal tax liability concerning [VMR's] . . . corporate income taxes for 2015," (Dkt. No. 26-1, ¶ 3–4; *see also* Dkt. No. 26-3), "a federal contractor [Federal Payment Levy Program ("FPLP")] levy was served by the [IRS] upon the Bureau of Fiscal Service [("BFS")], which administers the FPLP, on July 18, 2016." (Dkt. No. 26-1, ¶ 4; *see also* Dkt. No. 26-2, ¶ 3). The IRS issued a "post-levy pre-collection due process ('CDP') notice" of the levy to VMR, which was mailed on or about July 25, 2016. (Dkt. No. 26-1, ¶ 7; Dkt. No. 26-2, ¶ 3).

The levy allowed the IRS to "offset three debts–matched through the FPLP–which were credited toward the tax liabilities of [VMR]." (Dkt. No. 26-1, ¶ 6; Dkt. No. 28-4, ¶ 6). The first seizure ("First Seizure") was based on two invoices dated June 16, 2016, which totaled $14,225.92. (Dkt. No. 1, ¶ 27; Dkt. No. 26-1, ¶ 8). The First Seizure was "credited toward VMR's tax liabilities on July 5, 2016." (Dkt. No. 26-1, ¶ 6; Dkt. No. 28-4, ¶ 6). The second seizure ("Second Seizure") was based on an invoice dated July 22, 2016, for $5,901.98. (*Id.*). It was "credited toward VMR's tax liabilities on August 24, 2016." (*Id.*). The third seizure ("Third Seizure") was based on an invoice dated November 16, 2016, for $47,025.16. (*Id.*). It was "credited toward VMR's tax liabilities on July 22, 2017." (*Id.*).[4]

---

[4] All four invoices at issue bore Plaintiff's former name, i3Cable & Harness, and the address of PO Box 1830, Binghamton, New York. (Dkt. No. 26-4, Dkt. No. 26-5, Dkt. No. 26-6, Dkt. No. 26-7).

After it sent Defendant invoices for its work and product, Plaintiff was informed on July 5 and August 24, 2016, "that the Government had seized its payments . . . to pay for debts owed by [VMR]." (Dkt. No. 28, ¶ 11). Neither party has provided the Court with the notice that was provided to Plaintiff.[5] Plaintiff has submitted an affidavit from its Vice President for Contracts, Roger Lucas, stating that from October 2016 through July 18, 2017, he had "several telephone conversations with IRS officials regarding the wrongful levy of its funds to pay for a debt of VMR Electronics." (Dkt. No. 28, ¶ 12). Lucas did not, however, describe the substance of any of these conversations. In its Complaint Plaintiff alleges that it was "advised . . . that the application of the [First and Second Seizures] was clearly improper and that the matter would be resolved," again without describing any specific conversation or the date of any such conversation. (Dkt. No. 1, ¶ 34).

Plaintiff has provided the Court with a notice dated July 22, 2017 from the Bureau of the Fiscal Service, directed to VMR Electronic Corporation at PO Box 1830 in Binghamton, New York, in connection with the Third Seizure. (Dkt. No. 28-2, at 3). The record does not reflect how Plaintiff received this notice sent to VMR Electronic Corporation.[6] The notice states that $47,024.15 was applied to a tax levy, in connection with the FPLP. The notice states that the agency "has previously sent notice to you . . . explain[ing] the amount and type of debt you owe [and] the rights available to you," and states that "[i]f you believe your payment was reduced in

---

[5] The Court notes that the record contains emails on July 6, 2016 and August 25, 2016, which appear to notify Plaintiff's controller of "payment action" on the invoices, and provide instructions for obtaining "specific payment information" on a web application. (Dkt. No. 28-2, at 4–5). Neither party has informed the Court what information was available to Plaintiff on that web application.

[6] Nor does the record reflect why the address for VMR Electronic Corporation on this notice is the same address listed for Plaintiff's controller in the 2016 emails or how the Government issued its due process notices to VMR Electronics Corporation. *See* Dkt. No. 26-2, ¶ 3 (stating that post-levy pre-CDP notice was issued to the VMR Electronics Corporation in July 2016); Internal Revenue Manual 5.11.7.2.3.3. (describing the FPLP notice process for pre-levy and post-levy CDP notices).

4

error or if you have questions about this debt, you must contact the agency at the address and telephone number shown above." (Dkt. No. 28-2, at 3). In his affidavit, Lucas states that "[p]rior to the seizure of the $47,024.15 by the IRS in July 2017, [Plaintiff] had no knowledge that the Government had intended to seize such funds to pay for the tax debt of VMR Electronics," and that it had "no knowledge of the Service's use of the Federal Payment Levy Program to seize future payments of funds owed to VMR Electronics." (Dkt. No. 28, ¶ 13). Lucas asserts that the Government provided "no notice of the 'levy' served under the program." (*Id.*).

Plaintiff has provided a copy of a letter that it faxed to an individual at the IRS Taxpayer Advocacy Service on August 28, 2017, with supporting documentation, requesting payment of the total amount seized, $67,154.05, because the monies were "erroneously redirected to pay down a debt of a totally different company." (Dkt. No. 28-1, at 1). Lucas states that Plaintiff spoke to an individual at the IRS on August 30, 2017, and faxed additional documentation supporting its request. (Dkt. No. 28, ¶ 15).

Plaintiff submitted an administrative wrongful levy claim to the IRS on October 31, 2017. (Dkt. No. 26-8). Lucas further states that on November 2, 2017, an individual with the Taxpayer Advocate Service contacted Plaintiff, and said that she was assigned to the case and that "the IRS could not raise a statute of limitations defense because of their on-going negotiations." (Dkt. No. 28, ¶ 16). By letter dated December 12, 2017, "[t]he IRS disallowed [Plaintiff's] wrongful-levy claim for the [First Seizure] and [Second Seizure], stating in its letter of disallowance that the claims were not filed within nine months of the date of the levy as required by 26 U.S.C. § 6532(c)(1)." (Dkt. No. 26-1, ¶ 12; Dkt. No. 28-4, ¶ 12). By letter dated January 19, 2018, "[t]he IRS also disallowed [Plaintiff's] claim of wrongful levy as to the [Third Seizure], stating in its letter of disallowance that [Plaintiff] failed to establish that the payment

5

did not belong to VMR Electronics or that [Plaintiff] had an interest in the payment that was superior to that of the United States." (Dkt. No. 26-1, ¶ 13; Dkt. No. 28-4, ¶ 13). On May 21, 2018, Plaintiff filed the instant Complaint. (Dkt. No. 1).

## III. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

"Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). The Court will "take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). In resolving a motion to dismiss for lack of subject-matter jurisdiction, the Court may consider competent evidence outside the pleadings, such as affidavits and exhibits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Tandon*, 752 F.3d at 243 (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). A plaintiff asserting subject-matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

### B. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of

the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

## IV. DISCUSSION

Defendant argues the suit should be dismissed because "[t]he explicit waiver of the United States' sovereign immunity for wrongful levy suits under [the Internal Revenue Code] § 7426 is conditioned upon the wrongful levy suit being brought, or the wrongful levy administrative claim being submitted, within 9 months of the date of the levy." (Dkt. No. 29, at 6 (citing 26 U.S.C. § 6532(c)(1))). When a plaintiff who sues the United States "fails to comply with the relevant statute of limitations, the court is deprived of subject matter jurisdiction." *Meminger v. U.S. I.R.S.*, No. 91-cv-6971, 1993 WL 17311, at *3, 1993 U.S. Dist. LEXIS 458, at *10 (S.D.N.Y. Jan. 21, 1993) (citing *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991)).

### A. Federal Payment Levy Program

Section 6331 of the Internal Revenue Code allows the IRS to collect the taxes of a delinquent taxpayer "by levy upon all property and rights to property . . . belonging to such

7

person." 26 U.S.C. § 6331(a). Levies "may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy." 26 C.F.R. § 301.6331-1.

Typically, "a levy shall extend only to property possessed and obligations existing at the time thereof." 26 U.S.C. § 6331(b). However, § 6331(h) allows the IRS to engage in "continuing levy on certain payments," which allows the levy to be "continuous from the date such levy is first made until such levy is released." 26 U.S.C. 6331(h)(1). This section "provide[s] a means for the IRS to levy property and obligations to the taxpayer which are not yet in existence at the time of the attachment." *Hines v. United States*, 658 F. Supp. 2d 139, 145 (D.D.C. 2009). Though continuing levies under § 6331(h)(1) are generally only allowed to "attach to up to 15 percent of any specified payment due to the taxpayer," § 6331(h)(3) allows for 100 percent of a payment to be levied "in the case of any specific payment due to a vendor of property, goods, or services sold or leased to the Federal Government."

Section 6331(h) serves as the statutory authorization for the FPLP. (Dkt. No. 26-2, ¶ 1). The FPLP allows the "IRS [to] collect overdue taxes through a continuous levy on certain payments disbursed by the Fiscal Service." *In re Return of Seized Prop., $4,000 in U.S. Currency*, 130 F. Supp. 3d 1354, 1355 n.2 (S.D. Cal. 2015). The FPLP "was developed as the automated means intended to administer [Internal Revenue Code § 6331(h)]; therefore, no paper levy documents are served." Internal Revenue Manual ("IRM") § 5.11.7.2.1. Rather, "[a]ll delinquent [tax] modules that meet the selection criteria [for FPLP] [are] transmitted to [the Bureau of Fiscal Service] to be matched with federal payments." *Id.* § 5.11.7.2.3.1. "[O]nce a delinquent tax module's taxpayer identification number ('TIN') matches the TIN for a federal payment, the FPLP automatically diverts the payment to the delinquent tax module." (Dkt. No.

26-1, at 11). When money is levied from a federal contractor under the FPLP, the contractor is issued a "CDP notice after the levy . . . inform[ing] the taxpayer that a levy has been issued, and they may still exercise their appeal right." IRM § 5.11.7.2.4.

### B. Wrongful Levy

In this case, Plaintiff brings its claims under 26 U.S.C. § 7426, which "provides third parties with a civil cause of action to recover from the IRS property 'wrongfully levied.'" *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 343 (3d Cir. 2000) (quoting 26 U.S.C. § 7426(a)(1)). Section 7426 states:

> **Wrongful levy.**–If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

*Id.* § 7426(a)(1). The relevant time limitation for wrongful levy actions under § 7426 is set forth in 26 U.S.C. § 6532(c) (1999), which during the relevant time stated:

> (c) Suits by persons other than taxpayers.–
>
> (1) General rule.–Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.
>
> (2) Period when claim is filed.–If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter.

9

The Second Circuit has held "service of the notice of levy on the possessor of the property triggers the running of the statute of limitations for the purposes of section 6532(c)." *Williams*, 947 F.2d at 39. In other words, the "date of the levy" means "the date on which the person possessing the property received notice of the levy." *Meminger*, 1993 WL 17311 at *3, 1993 U.S. Dist. LEXIS 458, at *8.

C.  **Timeliness**

Regarding the First and Second Seizures (Count Two), it is undisputed that Plaintiff did not file a claim within nine months "from the date of the levy." 26 U.S.C. § 6532(c); (Dkt No. 28-3, at 9).[7] Plaintiff does not challenge the untimeliness of its claim concerning the First and Second Seizures; Plaintiff argues that the statute should be tolled under the doctrine of equitable tolling. (Dkt. No. 28-3, at 9).

With respect to the Third Seizure (Count One), Plaintiff argues that its claim was timely and, in any event, equitable tolling should also apply to that claim. (Dkt. No. 28-3, at 4–8). Plaintiff asserts that its claim relating to the Third Seizure, filed on October 31, 2017, was timely filed because the nine months to file a claim under 26 U.S.C. § 6532(c)(1) runs from when "the funds were actually seized by the government and the Plaintiff was put on notice of the levy," which, Plaintiff contends, was July 22, 2017. (Dkt. No. 28-3, at 5; Dkt. No. 1, ¶ 18). Defendant, on the other hand, contends that the date of notice is irrelevant, because it had no duty to notify Plaintiff, a third party, of the levy, and the time limit in § 6532(c)(1) starts to run on "the date on

---

[7] Defendant is unclear exactly when BFS received notice of the levy in July 2016. In its motion, it argues both that the "FPLP levy was served by the [IRS] upon [BFS] . . . on July 18, 2016," (Dkt. No. 26-1, ¶ 4), and that "the levy was 'served' to BFS . . . the first week in July 2016). (*Id*. at 15). Nonetheless, the Court notes that the exact date in July 2016 on which the levy was served is not dispositive in this case.

The First Seizure was invoiced on June 16, 2016 and seized on July 5, 2016. (Dkt. No. 26-1, ¶¶ 6, 8). The Second Seizure was invoiced on July 22, 2016 and seized on August 24, 2016. (*Id*.). The nine-month limitations period expired in April 2017, and Plaintiff did not submit an administrative wrongful levy claim to the IRS until October 31, 2017. (Dkt. No. 26-8).

which the person possessing the property received notice of the levy," which, in this case, was in July 2016. (Dkt. No. 26-1, at 14 (quoting *Meminger*, 1993 WL 17311, at *3, 1993 U.S. Dist. LEXIS 458, at *8)).

### 1. Date of Levy for Continuing Levies under the FPLP

Plaintiff argues that construing "the date on which the person possessing the property received notice of the levy" for continuing levies under the FPLP would "create an absurd result." (Dkt. No. 28-3, at 6). This is because "the limitations period [could] pass before there has been a seizure of property to contest, or the Plaintiff aware of the levy under the FPLP," rendering causes of action under § 7426(a)(1) "meaningless to those non-taxpayers whose property was seized pursuant to a continuing levy under the FPLP." (*Id.*). Plaintiff thus argues that the statute of limitations in this case began to run on July 22, 2017, when the funds from the Third Seizure were seized and Plaintiff became aware of the levy on its most recent invoice. (Dkt. No. 28-3, at 8).

Defendant disagrees and contends that the Second Circuit's holding in *Williams* makes clear that there is no "notice requirement as a component of [a] wrongful levy cause of action." (Dkt. No. 29, at 3). As such, it argues the statute of limitations in this case began to run when the levy was served on BFS in July 2016. (Dkt. No. 26-1, at 16).

The parties have not cited, and the Court has not found, any caselaw applying the limitations period for a wrongful levy action by a nontaxpayer involving a continuing levy under the FPLP. Plaintiff has not cited to any caselaw or statutory support for its argument that the statute of limitations should track actual notice of the levy to Plaintiff or the date the funds were seized. (Dkt. No. 28-3, at 4–6). The wrongful levy statute explicitly allows actions "to be brought without regard to whether such property has been surrendered to or sold by the Secretary." 26 U.S.C. § 7426(a)(1). That language suggests that property does not need to be seized for a levy

to occur. *See Mottahedeh v. United States*, 794 F.3d 347, 351 (2d Cir. 2015) (rejecting the plaintiff's definition of a levy as a "legally sanctioned seizure and sale of property" and holding that "a property need not have been sold in order for a 'levy' to have occurred under § 6532(c)").

The Court notes that the concern articulated by Plaintiff—that the limitations period could expire before Plaintiff was aware of the levy—was rejected by the Second Circuit in *Williams*. 947 F.2d at 39. In *Williams*, that government seized cash after the plaintiff was arrested. *Id.* at 38. The IRS later issued a notice of levy for the cash based on tax deficiencies of the plaintiff's co-arrestee. *Id.* Five years later, the plaintiff filed a wrongful levy claim, arguing the money belonged to him and not his co-arrestee. *Id.* The Second Circuit held that the "date of the levy" was the date the police department received notice of the levy, and thus the plaintiff's claims were time-barred. *Id.* at 39–40. The IRS was not required to give notice to the plaintiff or any other competing claimants. *Id.* at 40.

The levy at issue in *Williams*, however, was not a continuous levy. As the Tenth Circuit explained in *Dieckmann v. United States*, "Congress in fixing the nine-month time limit in section 6532 within which an action may be brought assumed that the owners of property would exercise reasonable diligence in looking after it." 550 F.2d 622, 624 (10th Cir. 1977). Therefore, the nine-month time limitations period "was designed to provide an opportunity to a person of reasonable diligence (in keeping track of his own property) to discover if someone with whom it had been entrusted no longer had it in his possession." *Id.*

This rationale does not apply with equal force to competing claimants subject to continuous levies under the FPLP. In *Williams*, even if the plaintiff did not have notice of the levy, he had notice that he was not in possession of his property. 947 F.2d at 38–40. There would, therefore, be a basis for concluding that he failed to act with "reasonable diligence" to

12

"keep[] track of his own property." *Dieckmann*, 550 F.2d at 624. In the instant case, when the levy was served to BFS in July 2016, BFS was not in possession of Plaintiff's property.

Defendant argues that its notice to BFS was sufficient, and that it had no obligation to give notice to "potential competing claimants." (Dkt. No. 26-1, at 14). *See Williams*, 947 F.2d at 39 (explaining that because "[n]otice of the levy to all potential competing claimants to the property would be impractical and overly burdensome on the government . . . [it is] not required."); *Dieckmann*, 550 F.2d at 624 ("26 U.S.C. § 7426 does not impose a duty on the United States to give notice to a possible third-party claimant or to search for them."); *Am. Honda Motor Co. v. United States*, 363 F. Supp. 988, 991 (S.D.N.Y. 1973) (holding that the "IRS has no duty to notify creditors, qua creditors, of a levy" and "no requirement that IRS seek to discover security interests in the property and funds upon which it levies"). Here Plaintiff alleges that it "used its own labor and materials to fulfill number of contractual obligations to the Defendant." (Dkt. No. 1, ¶ 15). It is not clear that caselaw excusing the IRS from any obligation to locate or notify "potentially competing" or "possible" third-party claimants would apply to a known claimant.

Plaintiff argues that the application of the statute of limitations in this case—the requirement that any claim be filed within nine months of the July 2016 service of levy, i.e., April 2017—would extinguish its right to a wrongful levy action before it was even notified of the levy in July 2017, and thereby violate due process. (Dkt. No. 28-3, at 6). The Due Process Clause of the Fifth Amendment provides that "[n]o person . . . shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380

13

U.S. 545, 552 (1965))). In general, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances. . . [to afford individuals] an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *see Nnebe v. Daus*, 931 F.3d 66, 88 (2d Cir. 2019).

In the context of tax levies, two circuit courts have held that applying the statute of limitations to deprive a nontaxpayer account holder of their meaningful opportunity to be heard may violate due process. *See Scheafnocker v. Comm'r of Internal Revenue Serv.,* 642 F.3d 428, 430 (3d Cir. 2011) (remanding to consider due process claim where the plaintiff "did not receive any notice that the IRS had levied funds she held jointly with her husband," and whose wrongful levy claim was time-barred), *vacated on other grounds*, No. 08-2655, 2012 WL 1854183, 2012 U.S. App. LEXIS 10205 (3d Cir. Apr. 24, 2012); *Carter v. United States*, 110 F. App'x 591, 596–97 (6th Cir. 2004) (declining to "construe [§ 6532's] statute of limitations as precluding a claim where doing so would violate due process" when the plaintiff was "misled, to her prejudice" by a letter from the IRS and she was "deprived of a meaningful opportunity to litigate her claims").

Here, Plaintiff was aware that the Government had seized its payments in July and August 2016, but the record does not reflect what notice Plaintiff received. Lucas asserts that Plaintiff had no notice of the levy served under the FPLP and no knowledge of the Government's use of the FPLP "to seize future payments of funds" owed to VMR Electronics. (Dkt. No. 28, at 2). While Defendant argues that Plaintiff had "actual notice with respect to the first two payments, and constructive notice with respect to the third payment, that the payments were being offset toward [VMR's] tax liabilities," Defendant has not provided evidence of that notice. (Dkt. No. 29, at 5). Plaintiff has provided the July 22, 2017 notice to VMR Electronics

14

Corporation, but that notice is dated after the nine-month statute of limitations had run. (Dkt. No. 28-2, at 3).[8] On this record, the Court cannot determine what, if any, notice was provided to Plaintiff regarding the continuing levy under FPLP before the statute of limitations had run. (Dkt. No. 28, at 2). Absent any evidence regarding what information was provided to Plaintiff, and further briefing from the Defendant regarding due process, the Court at this time denies the motion to dismiss Count One without prejudice to renewal.[9]

## 2. The Application of Equitable Tolling to § 6532

Plaintiff argues that it is entitled to equitable tolling for all three seizures. (Dkt. No. 28-3, at 6–9). Plaintiff argues that equitable tolling is appropriate for (1) the First and Second Seizures based upon the representations in telephone conferences with IRS officials (Dkt. No. 28-3, at 9; Dkt. No 28, ¶ 12), and (2) for the Third Seizure because "Plaintiff had no knowledge of the [continuing] levy"; "no amount of due diligence would have revealed [its] existence"; and the limitations period expired before Plaintiff even became aware of the levy. ( Dkt. No. 28-3, at 7).

Equitable tolling applies only in "rare and exceptional circumstance[s]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (citing *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir. 1999)). A litigant "seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

---

[8] The Court notes that the IRS Manual provides "notice after the levy" to taxpayers whose payments are levied under the FPLP, which "inform[s] the taxpayer that a levy has already been issued, and they may still exercise their appeal right." Internal Revenue Manual § 5.11.7.2.4. *See* 26 USC § 6330(f) (providing that taxpayer who has been served with a Federal contractor levy "shall be given the opportunity for [a] hearing . . . within a reasonable period of time after the levy"). In this case, the record does not reflect how VMR was originally notified of the levy, or how Plaintiff obtained the 2017 notification to VMR that it filed. (Dkt. No. 28-2, at 3).

[9] For these reasons, the Court also denies—without prejudice to renewal—Defendant's motion for summary judgment in the alternative on Count One. Given its failure to address Plaintiff's arguments regarding notice of the continuing levy under FPLP or due process, Defendant has failed to "show that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322.

way and prevented timely filing.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).

Plaintiff has not alleged facts that would support equitable tolling for the First and Second Seizures (Count Two). On July 5 and August 24, 2016, Plaintiff "was informed that the Government had seized its payments . . . to pay for debts owed by VMR electronics." (Dkt. No. 28, ¶ 11). While Plaintiff had "several telephone conferences with IRS officials regarding the wrongful levy" from October 2016 to July 2017, (*id.* ¶ 12), it has not provided any details of the the content of these phone calls or explained why it failed to take action regarding the seizures before April 2017 (when the statute of limitations expired). While Plaintiff asserts in its opposition that "[i]t was told not to worry about the statute of limitations issue as to [the First and Second Seizures]," (Dkt. No. 28-3, at 9), the Court cannot rely on assertions of fact in a memorandum of law. Lucas's affidavit asserts that Plaintiff was told on November 2, 2017—*after* the statute of limitations had expired for the first two seizures—that "the IRS could not raise a statute of limitations defense because of their on-going negotiations." (Dkt. No. 28, ¶ 16). Thus, this assertion would not provide a basis for concluding that the Government prevented Plaintiff from timely filing a claim. Since the claim for these seizures is untimely and Plaintiff has failed to plead facts supporting equitable tolling, Count Two must be dismissed.[10] *Mottahedeh*, 794 F.3d at 352 (declining to equitably toll the statute of limitations for the plaintiff's § 7426 claim because she "has neither alleged that anything prevented her from commencing a timely suit in response to the . . . Notice of Levy, nor has she pursued her remedies diligently").

---

[10] Having granted the Defendants motion to dismiss Counts 2, 3, and 4, the Court need not consider Defendant's motion for summary judgment on these claims.

16

Regarding the availability of equitable tolling for the Third Seizure (Count One), "[n]ot all time limitations are subject to equitable tolling." *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000). The possibility of equitable tolling depends on whether the relevant time limitation is analogous to a statute of limitations, in which case it "may be tolled as necessary to avoid inequitable circumstances," or whether it operates as a jurisdictional bar. *Id.* If the time limit is construed as a jurisdictional bar, it "deprive[s] a court of subject matter jurisdiction over an action that is not timely filed," *Williams*, 947 F.2d at 39, because "[w]hen an action is brought against the United States government, compliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist." *Id.*

"The basic question to be answered in determining whether . . . a statute of limitations is to be tolled, is one of legislative intent." *Iavorski*, 232 F.3d at 129 (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 426 (1965) (internal quotation marks omitted)). However, "[b]ecause Congress ordinarily does not explicitly state whether a limitations period is 'jurisdictional,' the nature of a limitations period is a matter of statutory construction." *Id.*

In determining whether Congress intended a time limitation to act as a jurisdictional bar, the Supreme Court has provided significant guidance. *See United States v. Brockamp*, 519 U.S. 347, 349 (1997); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). Generally, "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin*, 498 U.S. at 95 (quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 27 (1989)). However, in suits against the United States, "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. N. Dakota*, 461 U.S. 273, 273–74

(1983); *see also United States v. Williams*, 514 U.S. 527, 531 (1995) (holding that courts should "constru[e] ambiguities in favor of immunity" when confronted with a potential waiver of sovereign immunity). Nonetheless, in *Irwin*, the Supreme Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. at 96.

In *Brockamp*, the Supreme Court assumed, "for argument's sake" that the rebuttable presumption articulated in *Irwin* applied with equal force to a limitations period in a tax refund suit against the Government. 519 U.S. at 350. The Court held that the time limitations were jurisdictional because the statute at issue "set[] forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling.'" *Id.* at 351. Additionally, the Court noted that "[t]ax law, after all, is not normally characterized by case specific exceptions reflecting individualized equities," *id.* at 352, and reading an equitable tolling exception into a tax statute "could create serious administrative problems by forcing the IRS to respond to . . . a large number of claims . . . which, upon close inspection, might turn out to lack sufficient equitable justification." *Id.* at 352–53.

In support of its position, Plaintiff cites the Supreme Court's decision in *Irwin* and two cases in the Ninth Circuit, *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995), and *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 954 (D. Nev. 2004). According to Plaintiff, "the language of 26 [U.S.C.] § 6532(c)(1) more closely resembles the simplicity of the language in *Irwin*" rather than the "emphatic and highly detailed" language in *Brockamp*. (Dkt. No. 28-3, at 8). As such, Plaintiff urges the Court to follow the Ninth Circuit's reasoning in *Supermail*, which held that "equitable tolling may be applied to extend the period

18

for bringing a wrongful levy claim against the government under 26 U.S.C. § 7426." 68 F.3d at 1207.

Conversely, Defendant argues that, similar to *Brockamp*, the language of § 6532(c) "articulates one specific instance in which Congress permitted the nine-month period to be tolled; no additional exceptions should be implied from the statute." (Dkt. No. 29, at 7). Moreover, Defendant cites Second Circuit precedent that states that the time limit in § 6532(c) is jurisdictional and equitable tolling is thus inapplicable. *Williams*, 947 F.2d at 40 (holding that "a mistaken advisement by the IRS does not require that [the plaintiff's wrongful levy] action be allowed to proceed, since subject matter jurisdiction may not be created by estoppel or consent of the parties"); *cf. Mottahedeh*, 794 F.3d at 352 (noting that the Court "need not address" whether "the doctrine of equitable tolling could be appropriately invoked" for a claim under § 7426). Notably, the Second Circuit's decision in *Williams* was decided after the Supreme Court's decision in *Irwin*. While *Brockamp* post-dates *Williams*, given the similarities between the specific language and subject matter—tax—of the statute at issue in *Brockamp* and § 6532(c), it does not appear as though *Brockamp* casts doubt on the Second Circuit's decision in *Williams*.[11] Plaintiff has not persuasively distinguished it from the instant case. As such, the Court finds that equitable tolling is unavailable as to Count One.

## V. CONCLUSION

For these reasons, it is hereby

---

[11] The Court notes that the Third Circuit's decision in *Becton* persuasively illustrates why the time limitation in § 6532(c) is jurisdictional and cannot be equitably tolled. 215 F.3d at 348–54. Though the court in *Becton* acknowledged that the language of § 6532(c) "falls somewhere in between the time limitation considered in *Irwin* and the time limitation considered in *Brockamp*," it ultimately found the statute to be jurisdictional because (1) it only authorizes suits against the government, (2) it has explicit exceptions to its basic time limit, (3) it is a tax statute, and (4) the majority of Circuits to decide the issue have found the statute to be jurisdictional, unlike the Ninth Circuit. *Id*. Thus, the court in Becton found "that a careful reading of *Irwin* and *Brockamp* leads ineluctably to the conclusion that Congress did not intend for the time limitation in section 6532(c) to be equitably tolled." *Id*. at 353.

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 26) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the Complaint's Second, Third and Fourth Counts are **DISMISSED without prejudice** under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; and it is further

**ORDERED** that Defendant's motion to dismiss Count One is **DENIED** without prejudice to renewal**.**

**IT IS SO ORDERED.**

Dated: February 12, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge